## BERGMAN v CLIMINS

Ohio Appeals, 9th Dist, Summit Co
No 1709. Decided Mar 14, 1930

Ormsby, Kennedy & Vogel, Akron, for
Bergman.
Alexander S. Greenbaum, Akron, for
Climins.

FUNK, PJ.

First, as to the first cause of action, which has reference entirely to the first arrest in December, 1927.

Although it is alleged in the first cause of action that defendant represented to plaintiff "that the alleged charge against him has been suppressed by him," it clearly appears from the evidence that there was no such representation to the plaintiff at the time he testifies he paid the $350 for services in connection with the first arrest, which amount is alleged in the petition as being $300. While in some places the evidence may indicate that plaintiff testified that defendant represented to him that he had suppressed the charges against him for his deportation, it clearly appears from all the testimony of the defendant that the representation at the time the money was paid was entirely as to defendant's ability to in some manner improperly influence the officers to suppress the charge against the plaintiff.

Second, as to the allegations in the second cause of action, which have reference entirely to the second arrest in March, 1928.

Although the allegations in the second cause of action are to the effect that defendant represented to plaintiff that he had procured a cancellation of the charges against him and a revocation of the order of deportation, these allegations are not supported by the evidence. It clearly appears from the record that plaintiff had no communication whatever with the defendant after his second arrest and before

he was released from jail; that all the conversation with the defendant concerning the second arrest and before the money was paid, was by the brother of the plaintiff, who testified that defendant said that "If the money was paid he said he would agree to get my brother out of jail." The testimony of the brother was all as to what the defendant said he could or would do by way of influencing the immigration officers to cancel the charges against the plaintiff and release him from jail and have his bond released. Plaintiff's brother definitely testified that he paid the defendant $500 at one time at Akron before they left for Cleveland, which money plaintiff had sent him for use while he was attending a dental school. There is no evidence that $200 was paid on one day and $250 on another day.

The rule is well established that, to justify one in relying upon the representations as being false and to entitle one to recover upon representations that are false, such representations must relate to present or previously existing facts, and representations as to what could or would be done in the future will not sustain a recovery. 15 Oh Ap 484, Colt Co. v. Wasson.

As the evidence clearly shows that at the time defendant received the money in both causes of action the representations were as to what he could and would do to get plaintiff discharged from arrest and his bond released, and pertained to something to be done in the future and not to present or previously existing facts; the allegations of the petition in these particulars are not sustained by the evidence.

Third, we find no evidence whatever that the defendant represented to the plaintiff that defendant was an attorney; in fact, the evidence is all to the contrary.

While there is some evidence that defendant said to the brother when he first met him at Akron after the second arrest that he would act as attorney for plaintiff in endeavoring to get the charges against him canceled, the plaintiff knew at the time of the first arrest that defendant was not an attorney, and the brother testified that he learned that defendant was not an attorney when they arrived at the immigration office in Cleveland, and there were no steps taken by either the plaintiff or his brother, who was representing him at the time of the second arrest, to rescind their agreement with the defendant and recover the money as long as they thought defendant could influence the officers to release plain-

tiff.

Fourth, was the money paid by plaintiff to defendant for an unlawful purpose, and if so, were the parties not in pari delicto so as to entitle plaintiff to recover?

The record clearly shows that defendant was not employed to perform any legal services but that his employment was entirely for the purpose of using influence upon the immigration officers to have the plaintiff released and discharged and not be deported, without any reference as to whether or not plaintiff was properly arrested and should be deported.

We do not think anyone can read the record in this case and come to any other conclusion than that the defendant was employed for an illegal purpose. As we read the record, the plaintiff and his brother make no other claim than that defendant was to use his influence to have plaintiff discharged—there being no claim that he was to defend him in any legal action. It clearly appears from the record that they did not expect plaintiff and his bond to be released because he was wrongfully arrested, or by reason of any legal right, but because of some improper influence defendant might be able to have with the officers, so that they would just cancel the charges and release plaintiff and his bond, regardless of whether or not he was properly arrested or should be deported.

No principal of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim; so that under this rule of law plaintiff would not be entitled to recover.

13 C. J., "Contracts," Sec. 440, p. 492.

However, counsel contends that plaintiff should recover in this action under an exception to the above rule, which is that where the parties are not in pari delicto —that is, where they are not on the same plane or the same level, and one has taken advantage of the other through some fraud or by placing him in fear or by means of duress—a court may interfere and grant relief at the suit of the one of whom advantage was taken, where public policy requires the intervention of the court.

13 C. J., "Contracts," Sec. 442 et seq., pp. 498 ff.

It is therefore contended that plaintiff should recover even though the agreement was illegal, for the reason that it is claimed that the defendant obtained the money and the automobile from plaintiff and his brother by taking advantage of them because they were foreigners and ignorant and did not understand the law, and that defendant obtained said money and automobile from them while plaintiff was somewhat under duress because he was under arrest and in the custody of the U. S. immigration officers, charged with the violation of law for the purpose of being deported, and that they were therefore not in pari delicto.

Counsel will observe that courts are and should be cautious in affording relief under this exception, and should act only where it is evident that some great public good can be served by an action of this kind rather than by inaction or enforcing the strict letter of the law..

We have carefully read the brief of defendant in error. The authorities cited are no doubt good law under the given state of facts in each case, but have no application to the facts in the instant case as disclosed by the evidence.

The leading case in Ohio on this question is **James v. Roberts, 18 Ohio 548**, which is cited with approval in **Williams v Englebecht, 37 Oh St 383**, at p. 386, and in **Insurance Co. v. Hull, 51 Oh St 270**, paragraph 4 of syllabus and at p. 280.

In James v. Roberts, plaintiff was threatened with a "groundless prosecution"—that is, he was threatened with prosecution of a crime of which he was wholly innocent. The other two cases refer particularly to this element. There is no claim in the instant case that plaintiff was wrongfully arrested or that there were no grounds for his deportation.

Taking the record as a whole, and especially in reference to the manner in which the plaintiff and his brother testified, the length of time both have been in America and the amount of travel they have had, plaintiff having been back to Europe and returned to America, the business plaintiff was and had been in and his experience in having been previously arrested, the education of the brother and all plaintiff's experience as shown by the record, we do not find that plaintiff or his brother was so ignorant that they did not know and understand what they were doing when they paid defendant.

Neither do we find that plaintiff was under such fear or duress or that such fraud was practiced upon him by defendant as

would entitle him to recover. It will be observed that defendant had not arrested plaintiff or caused his arrest, but that plaintiff employed defendant because he was supposed to be a friend of the arresting officers and thought defendant could induce them to discharge plaintiff and release his bond without regard to his guilt or innocence. There is no allegation in the petition or any claim that there was a conspiracy between defendant and the arresting officers to extort this money from plaintiff.

Finding that the allegations of the petition are not sustained by the evidence, that the money was paid for an illegal purpose, and that the claim of plaintiff that he paid defendant while under such duress or through such fear as would entitle him to recover is not sustained by the evidence, the law will aid neither party and leaves them where it finds them.

The verdict is therefore contrary to law, and the judgment is reversed and the cause remanded.

Pardee, J, and Washburn, J, concur.